IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIKHS FOR JUSTICE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MANMOHAN SINGH,<br><br>Defendant. | Case No. 1:13-cv-01460-JEB |

**THE UNITED STATES' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS SUGGESTION OF IMMUNITY AND IN OPPOSITION TO PLAINTIFFS' MOTION TO DENY IMMUNITY TO MANMOHAN SINGH**

The United States submitted a Suggestion of Immunity in this case on May 2, 2014, informing the Court of its determination that Defendant Manmohan Singh is immune from this suit. *See* Suggestion of Immunity Submitted by the United States of America ("SOI"), ECF No. 7 (May 2, 2014). After briefing on the Suggestion of Immunity was complete, plaintiffs filed a Motion to Deny Immunity to Manmohan Singh, urging the Court to "disregard" the United States' Suggestion of Immunity. Pls.' Mot. to Deny Immunity to Manmohan Singh ("Pls.' Mot.") at 3, ECF No. 13 (July 18, 2014). Plaintiffs maintain that, because they have alleged violations of human rights and *jus cogens* norms, the Suggestion of Immunity is contrary to U.S. and international law and thus should be ignored. *See id*. at 1-3. As the United States has explained, however, a court may not disregard a Suggestion of Immunity or second-guess the analysis undertaken by the Executive Branch to determine that a foreign official is immune. *See* SOI at 3-6.

As the United States explained in its Suggestion of Immunity, Executive Branch determinations regarding whether a foreign official is immune from suit are binding on the courts and not subject to review. *See id*. In *Samantar v. Yousuf*, 560 U.S. 305 (2010), the Supreme Court held that the Foreign Sovereign Immunities Act left in place the Executive Branch's historical authority to determine the immunity of foreign officials. *Id*. at 322-25. The Court explained that a "two-step procedure was typically followed when a foreign official asserted immunity." *Id*. at 312. Under the first step—the only one that is relevant here—a foreign official facing suit in a U.S. court could request a "suggestion of immunity" from the State Department and, if the State Department made such a suggestion, the district court "surrendered its jurisdiction." *Id*. at 311-12; *see also Ex parte Peru,* 318 U.S. 578, 588 (1943) ("[T]he judicial department of this government follows the action of the political branch, and will not embarrass the latter by assuming an antagonistic jurisdiction."); *Republic of Mexico v. Hoffmann*, 324 U.S. 30, 35 (1945) ("It is . . . not for the courts to deny an immunity which our government has seen fit to allow[.]").

Courts, therefore, consistently have deferred to Executive Branch Suggestions of Immunity. *See, e.g.*, *Manoharan v. Rajapaksa*, 711 F.3d 178, 179 (D.C. Cir. 2013); *Ye v. Zemin*, 383 F.3d 620, 625, 627 (7th Cir. 2004) ("[T]he Executive Branch's suggestion of immunity is conclusive and not subject to judicial inquiry. . . . We are no more free to ignore the Executive Branch's determination than we are free to ignore a legislative determination concerning a foreign state."); *Se. Leasing Corp. v. Stern Dragger Belogorsk*, 493 F.2d 1223, 1224 (1st Cir. 1974) (rejecting argument that district court "erred . . . in accepting the executive suggestion of immunity without conducting an independent judicial inquiry"); *Spacil v. Crowe*, 489 F.2d 614, 617 (5th Cir. 1974) ("The precedents are overwhelming. For more than 160 years American

courts have consistently applied the doctrine of sovereign immunity when requested to do so by the executive branch. Moreover, they have done so with no further review of the executive's determination."); *Isbrandtsen Tankers, Inc. v. President of India*, 446 F.2d 1198, 1201 (2d Cir. 1971) ("[O]nce the State Department has ruled in a matter of this nature, the judiciary will not interfere."); SOI at 3-6 (citing additional cases).

Despite this overwhelming authority, plaintiffs suggest that the Human Rights Enforcement Act of 2009, Pub. L. No. 111-122, 123 Stat. 3480 (2009), somehow displaces the Executive Branch's traditional role in this area and authorizes courts to second-guess Executive Branch determinations of immunity. *See* Pls.' Mot. at 1-2. But plaintiffs cite nothing—in the statute, its legislative history, or any cases interpreting it—to support this assertion. The Human Rights Enforcement Act was enacted to "establish a section within the Criminal Division of the Department of Justice to enforce human rights laws, [and] to make technical and conforming amendments to criminal and immigration laws pertaining to human rights violations." Pub. L. No. 111-122, 123 Stat. 3480. The statute says nothing about the locus of control for decision making about foreign official immunity in actions brought in U.S. courts. In the face of such silence, this Court cannot infer congressional intent to displace the Executive Branch's traditional role in this area. *See Manoharan*, 711 F.3d at 179-80 ("In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." (quotations omitted)); *Midlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").

Indeed, the D.C. Circuit rejected a similar argument in *Manoharan*, concluding that a statute providing for the civil enforcement of human rights—the Torture Victim Protection Act of 1991—did not displace the well-established rule of deference to Executive Branch immunity determinations. 711 F.3d at 179-80. The D.C. Circuit's analysis in *Manoharan* applies with equal (if not greater) force to the Human Rights Enforcement Act of 2009, which provides for criminal enforcement of human rights.

Plaintiffs' other argument—that "[t]he Executive Branch has no power to [assert] immuni[ty]" when a plaintiff alleges a *jus cogens* violation, Pls.' Mot. at 2— is also without merit. The United States has suggested immunity for heads of state who were alleged to have committed *jus cogens* violations, and courts have deferred to the Suggestions of Immunity in those cases. *See*, *e.g.*, *Manoharan*, 711 F.3d at 179-80 (deferring to Executive Branch's Suggestion of Immunity in case involving allegations of extrajudicial killings by head of state); *Ye*, 383 F.3d at 627 ("The Executive Branch's determination that a foreign leader should be immune from suit even when the leader is accused of acts that violate *jus cogens* norms is established by a suggestion of immunity. We are no more free to ignore the Executive Branch's determination than we are free to ignore a legislative determination concerning a foreign state."). Indeed, no court has ever required a foreign official to be subjected to suit notwithstanding the Executive Branch's suggestion of head of state immunity. *See* SOI at 5-6 & n.4.

For these reasons and those set forth in the United States' prior submissions on the Suggestion of Immunity, the United States respectfully submits that Defendant Singh is immune in this action.

Dated: August 11, 2014

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN, JR.
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director

s/ Michelle R. Bennett
MICHELLE R. BENNETT (CO Bar No. 37050)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7310
Washington, D.C. 20530
Tel: (202) 305-8902
Fax: (202) 616-8470
Email: michelle.bennett@usdoj.gov

*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2014, I sent copies of the foregoing via U.S. Mail to the following *pro se* parties:

SIKHS FOR JUSTICE
Empire State Building
350 Fifth Avenue
59th Floor
New York, NY 10118

INDERJIT SINGH
350 Fifth Avenue
59th Floor
New York, NY 10118

s/ Michelle R. Bennett
MICHELLE R. BENNETT