UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SIKHS FOR JUSTICE**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **MANMOHAN SINGH.** <br><br> Defendant. | **Civil Action No. 13-1460 (JEB)** |

## MEMORANDUM OPINION

Defendant Manmohan Singh was, until very recently, the Prime Minister of India. Plaintiffs Sikhs for Justice, a non-profit organization, and Inderjit Singh have brought this suit alleging that the former Prime Minister tortured and killed Indian Sikhs during his time at the helm of that country's government and, before then, as Finance Minister. The United States, a non-party in this litigation, has filed a Suggestion of Immunity claiming that Singh, as the sitting Prime Minister, is entitled to head-of-state immunity. Although at the time of that filing, Singh was indeed Prime Minister, he left office three weeks later. Plaintiffs, consequently, counter that Singh is no longer entitled to such immunity. They are only partly correct. Although he is no longer a head of state, Singh is entitled to residual immunity for acts taken in his official capacity as Prime Minister. Because such residual immunity does not cover actions Singh pursued before taking office, however, the allegations stemming from his time as Finance Minister survive.

**I.    Background**

In September of 2013, Plaintiffs, on their own behalf and on behalf of unnamed Sikhs, filed this suit against Manmohan Singh, who was, at the time, Prime Minister of India. See ECF No. 1 (Complaint). Singh served as India's Prime Minister from 2004-2014. See Compl., ¶¶ 19,

1

21. Prior to that stint, he served as Finance Minister from 1991-1996. See id., ¶ 21. Plaintiffs allege that over the past thirty years, the Indian government has engaged in a pattern of oppression and violence against the Sikh religious minority. See id., ¶¶ 41-48. They predicate their suit on Defendant Singh's alleged personal culpability for these acts during his time as Finance Minister and later as Prime Minister. See id., ¶¶ 19-30.

After the Complaint was filed, the case languished for seven months while Plaintiffs struggled to effect service upon Defendant. See, e.g., ECF No. 3 (Feb. 20, 2014, Motion for Extension of Time to Effect Service); ECF No. 6 (April 14, 2014, Motion for Extension of Time to Effect Service). In the meantime, the United States weighed in on the suit on May 2, 2014, submitting a Suggestion of Immunity to this Court on Defendant's behalf. See ECF No. 7.

The same day that the Government filed its Suggestion of Immunity, the Court ordered Plaintiffs to lodge their opposition, if any, by May 23. See Minute Order (May 2, 2014). The deadline passed with no word from Plaintiffs, but because they were litigating *pro se* and there appeared to be some difficulties with the mail, see ECF Nos. 8, 9 (Mail Returned as Undeliverable Notices), the Court allowed for an extension of time. See Minute Order (June 5, 2014).

This delay turned out to be a boon for Plaintiffs: On May 16, while the Court awaited their Opposition, the Indian Election Commission announced its 2014 election results, revealing that then-Prime Minister Singh's party had lost the election. See Manmohan Singh Resigns Bringing to an End His 10-year Tenure, Times of India, May 17, 2014, http://goo.gl/wN5w1I. The next day he announced his resignation. See id. His successor, Narendra Modi, was sworn in on May 26, and Singh's term as Prime Minister officially ended. See Modi Sworn in as India's Prime Minister, Al-Jazeera, May 26, 2014, http://goo.gl/DWYMRQ. Seizing on that news, on

June 17, Plaintiffs lodged a brief Opposition, see ECF No. 10, arguing that the intervening political events had rendered the Suggestion of Immunity moot. The Government then replied, see ECF No. 12, Plaintiffs filed a Surreply, see ECF No. 13, and the United States also submitted a Supplemental Memorandum. See ECF No. 15. The dispute is thus now ripe for review.

**II.      Analysis**

The Court deals first with a preliminary matter. As a non-lawyer, Plaintiff Inderjit Singh may bring this suit on his own behalf, but he may not represent anyone else. See Georgiades v. Martin-Trigona, 729 F.2d 831, 834 (D.C. Cir. 1984). Both Sikhs for Justice and John Doe are thus dismissed without prejudice as Plaintiffs.

Moving now to the merits, the Court begins with the Government's Suggestion of Immunity, through which it informed the Court that the State Department had determined that Singh, as a sitting Prime Minister, is immune from suit pursuant to head-of-state immunity. See Suggestion of Immunity, ¶¶ 1-2. The Government went on to argue that this determination is a function of the executive's foreign-affairs power and is traditionally treated as dispositive by the courts. See id., ¶¶ 6-8. Plaintiffs mount two arguments against such immunity here. The first is that Singh lacks immunity from suit because the Foreign Sovereign Immunities Act – a statute the Government cited in passing in its Suggestion of Immunity – protects only foreign governmental entities from suit. See Opp. at 1-2. This contention can be dispatched quickly. "Even if a suit is not governed by the [Foreign Sovereign Immunities] Act, it may still be barred by foreign-sovereign immunity under the common law," which includes head-of-state immunity. Samantar v. Yousuf (Samantar I), 560 U.S. 305, 324 (2010). At the time of the common-law doctrine's inception, a state and its head were one and the same; common-law foreign-sovereign immunity, accordingly, encompassed head-of-state immunity. See The Schooner Exch. v.

3

McFaddon, 11 U.S. 116, 136-41 (1812) (discussing common-law immunity of nations and "princes" interchangeably). When Congress passed the FSIA, the statute superseded the common law of foreign-sovereign immunity, but it did nothing to disturb the status quo for immunities granted to heads of state. See Samantar I, 560 U.S. at 322. As common-law immunity is still available, therefore, its invocation is not invalid here merely because the FSIA is inapplicable.

Plaintiffs next argue that, because Defendant is no longer a head of state, he has lost the corresponding immunity. This is a more complicated question. The common law of foreign-sovereign immunity, from which head-of-state immunity is derived, is bifurcated into two subsets: status-based immunities and conduct-based immunities. See 1 Ved P. Nanda, David K. Pansius, Litigation of International Disputes in U.S. Courts § 4:2 (2014); accord Chimène I. Keitner, The Common Law of Foreign Official Immunity, 14 Green Bag 2d 61, 62 (2010). Status-based immunities "enable certain incumbent foreign officials to perform their duties unencumbered by legal proceedings." Keitner at 62. Conduct-based immunities "shield individuals from legal consequences for . . . acts performed on behalf of the state during their tenure in office." Id.

Head-of-state immunity is status based, attaching whenever an individual is a sitting head of state. See Nanda & Pansius, supra, § 4:2. In other words, during their time in office, heads of state are absolutely immune from suit in the United States, including for acts committed before their time in office. See, e.g., Habyarimana v. Kagame, 696 F.3d 1029, 1032 (10th Cir. 2012) (citing Ex Parte Republic of Peru, 318 U.S. 578, 589 (1943)); Doe v. Roman Catholic Diocese of Galveston-Houston, 408 F. Supp. 2d 272, 281 (S.D. Tex. 2005) (citing Straub v. A P Green, Inc., 38 F.3d 448, 451 (9th Cir. 1994); Abdulaziz v. Metro. Dade Cty., 741 F.2d 1328, 1329–30 (11th

4

Cir. 1984)). Independent resolution of whether a defendant is a head of state, moreover, would lead courts into the murky waters of foreign policy, implicating complex problems that the judiciary is ill equipped to handle. See, e.g., Ye v. Zemin, 383 F.3d 620, 627 (7th Cir. 2004); Spacil v. Crowe, 489 F.2d 614, 619 (5th Cir. 1974). Thus, in accordance with the executive's foreign-affairs power, "which includes, by implication, the power to accredit diplomats and recognize foreign heads of state," courts generally give dispositive weight to that branch's suggestion of immunity for a sitting head of state. Samantar II, 699 F.3d at 773 (discussing the historical development of common-law foreign-sovereign immunity). In line with this principle, the Court accepts that the Suggestion is dispositive on the question of whether Singh was entitled to head-of-state immunity at the time of its filing. He was, accordingly, absolutely immune from suit until May 26 – the day his successor as Prime Minister was sworn in.

The day he left office, however, Singh lost the absolute protection of status-based head-of-state immunity. As a now-former head of state, he nonetheless retains "residual immunity" for official acts taken while he served in that capacity. See 1 Oppenheim's International Law 1043-44 (former head of state retains continuing immunity for official acts taken as head of state); Doe v. De Leon, 555 F. App'x 84, 85 (2d Cir. 2014), cert. pending, 13-1380. Regardless of whether this residual immunity is merely derivative of status-based immunity or is actually a conduct-based immunity, it renders Singh immune from suit for official acts taken as Prime Minister, and the claims stemming from allegations of wrongdoing from 2004 to 2014 will accordingly be dismissed.

There is more to Plaintiffs' Complaint than that, however. The Court must also decide whether Singh is immune from suit for actions he took as Finance Minister – that is, for things he did before he became Prime Minister. While the Government's Reply in this case is silent on the

5

subject of Singh's liability for acts predating his time as Prime Minister, it has suggested in other cases that "'[a]fter a head of state leaves office[, ] that individual generally retains residual immunity only for acts taken in [an official capacity as head of state] and not for alleged acts predating the individual's tenure in office.'" Habyarimana, 696 F.3d at 1032 n.5 (quoting the Suggestion of Immunity) (first and third alterations in original). Further, while courts have not yet been called on to address the applicability of head-of-state immunity in a situation such as this, "there is respectable authority for denying head-of-state immunity to a former head of state for his private or criminal acts in violation of American law." In Re Doe, 860 F.2d 40, 45 (2nd Cir. 1988) (citing Schooner Exch., 11 U.S. at 132-34; The Republic of the Philippines v. Marcos, 806 F.2d 344, 360 (2d Cir. 1986); In re Grand Jury Proceedings, Doe No. 700, 817 F.2d 1108, 1111 (4th Cir. 1987)). While Singh's alleged acts as Finance Minister are not "private" *per se*, they did not occur in the course of his official duties as head of state; accordingly, they are not encompassed within the purview of head-of-state immunity. Under the present circumstances the Court will retain jurisdiction over the 1990s allegations relating to Singh's acts as Finance Minister.

The Government, finally, urges that the Court immediately lost jurisdiction upon the filing of the Suggestion premised on Singh's status as a then-sitting head-of-state, notwithstanding his subsequent resignation from office. That contention, however, is flawed as a matter of precedent and logic. The Government cites Zemin, 383 F.3d at 627, for the proposition that dismissal is appropriate when the head of state leaves office during the pendency of a suit because the suggestion of immunity becomes binding when it is submitted. See Reply at 2. Zemin, however, is inapposite. To be sure, the court in that case affirmed the dismissal of the suit on head-of-state immunity grounds despite the defendant's resignation as President of China

6

during the litigation. The Zemin plaintiffs' allegations, however, concerned official acts taken while the defendant was head of state and were, accordingly, covered by residual immunity even after his resignation. See Plaintiffs A, B, C, D, E, F v. Jiang Zemin, 282 F. Supp. 2d 875, 882-83 (N.D. Ill. 2003), aff'd sub nom. Ye v. Zemin, 383 F.3d 620. Plaintiffs' 1990s allegations in this case, in contrast, concern acts Singh took while he was a lower government official. Those acts are not sheltered by immunity derived from Singh's former status as Prime Minister.

What is more, even if the Court were to take the overly formal path and defer to the Government's Suggestion of Immunity because it was filed while Singh was Prime Minister, Plaintiff would simply refile his suit. At that point, there would be no grounds for a suggestion of immunity as to acts Singh took as Finance Minister, and the case would proceed much as it will here. In these circumstances, "the practicalities weigh heavily in favor" of retaining the suit. Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 837 (1989) (ruling on jurisdictional defects in diversity cases). This is not to say that Defendant may not be protected by other immunities not yet asserted by the Government, and Plaintiff must still successfully effect service upon him. In addition, Plaintiff Singh will need to demonstrate how he personally has standing to bring a suit based on Defendant Singh's acts as Finance Minister. Because this narrow subset of claims does not properly fall within the purview of head-of-state immunity, however, the Court will not dismiss the case in its entirety.

## III. Conclusion

For the reasons set forth in this Opinion, the Court will issue an Order dismissing Plaintiffs' claims stemming from Defendant's time as Prime Minister and dismissing the unrepresented Plaintiffs. The case, however, survives, limited to the allegations of misconduct from the 1990s.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 19, 2014